# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

TIMOTHY WILLIAMS,

    Petitioner,

v.                                                  Case No. 3:18-cv-859-TJC-JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

    Respondents.

## ORDER

**I.   Status**

Petitioner, Timothy Williams, an inmate of the Florida penal system, initiated this action, with help from counsel,[1] by filing a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Doc. 1. He also filed a memorandum of law supporting the Petition. Doc. 2. Petitioner challenges a state court (Duval County, Florida) judgment of conviction for which he is serving a twenty-five-year term of incarceration. Doc. 1. Respondents argue that the Petition is untimely filed and request dismissal of

---

[1] Rachael E. Reese, Esquire, is representing Petitioner in this action.

this case with prejudice. See Doc. 10 (Resp.).[2] Petitioner replied. See Doc. 13. This case is ripe for review.

## II.   One-Year Limitations Period

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) amended 28 U.S.C. § 2244 by adding the following subsection:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

[2] Attached to the Response are several exhibits. The Court cites the exhibits as "Resp. Ex."

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

### III. Analysis

On June 3, 2010, Petitioner entered an open plea of guilty to two counts of attempted second degree murder. Resp. Ex. B. Michael Bossen, Esquire, represented Petitioner when he entered his plea. See State v. Williams, No. 16-2008-CF-18083 (Fla. 4th Cir. Ct.). In October 2011, on the day Petitioner was set to be sentenced, Petitioner provided Bossen with a pro se motion to withdraw his plea. Resp. Ex. F at 101. Bossen asked the trial court to continue Petitioner's sentencing hearing, so Bossen could review the pro se motion and determine whether to adopt it. Id. The trial court granted Bossen's request, and after reviewing the contents of the pro se motion that included allegations that Bossen failed to adequately engage in pretrial discovery, Bossen determined that the motion should be filed with the trial court and moved to withdraw as

3

counsel. Id. at 101-02. The trial court granted Bossen's request to withdraw and appointed Adair Rommel, Esquire, to represent Petitioner. Williams, No. 16-2008-CF-18083; Resp. Ex. F at 125. After her appointment, Rommel declined to adopt the pro se motion to withdraw plea. Id. at 129. Then, on December 14, 2011, the trial court sentenced Petitioner to a twenty-five-year minimum mandatory term of incarceration as to each count and ordered that the sentences run concurrently. Resp. Ex. C. Petitioner did not seek a direct appeal, and thus his judgment and sentences became final upon the expiration of the time to file a notice of appeal, Friday, January 13, 2012. See Fla. R. App. P. 9.140(b)(3). Petitioner's AEDPA one-year statute of limitations would have commenced the next day, January 14, 2012. However, on December 22, 2011, before Petitioner's judgment and sentences became final, Rommel, on behalf of Petitioner filed with the trial court a motion under Florida Rule of Criminal Procedure 3.850. Resp. Ex. F at 1. Petitioner's Rule 3.850 motion tolled the commencement of his one-year period.

Rommel then moved to withdraw as counsel for Petitioner, and the trial court appointed Jonathan Sacks, Esquire, as postconviction counsel. See Williams, No. 16-2008-CF-18083. Following an evidentiary hearing, the trial court denied Petitioner's Rule 3.850 motion on July 24, 2012. Resp. Ex. F at 63. Petitioner appealed, and on July 24, 2014, the First District Court of Appeal per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. J.

4

The First DCA issued its mandate on August 19, 2014. <u>Id.</u> Petitioner's one-year limitations period, which remained tolled until the First DCA's mandate, began to run the next day, August 20, 2014.

On June 26, 2015,[3] 310 days into Petitioner's statute of limitations, Rachael Bushey, Esquire, on behalf of Petitioner, filed with the trial court a "Successive Motion for Post Conviction Relief" under Rule 3.850. Resp. Ex. K at 3-20. However, on September 7, 2017, the trial court dismissed Petitioner's successive Rule 3.850 as untimely filed. <u>Id.</u> at 32-35. The trial court also found Petitioner's motion "procedurally barred as successive and constitute[d] an abuse of process." <u>Id.</u> at 35. Petitioner appealed and the First DCA affirmed the trial court's dismissal, issuing its mandate on April 12, 2018. Resp. Ex. O. Because the state court dismissed Petitioner's successive Rule 3.850 as untimely and procedurally barred, it was not a "properly filed" pleading that statutorily tolled his one-year limitations period. <u>See</u> <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 414 (2005) (holding that a state postconviction motion rejected by the state court as untimely filed is not "properly filed" for purposes of § 2244(d)(2)); <u>Cardona v. Sec'y Dept. of Corr.</u>, No. 8:13-cv-2119-T-33MAP, 2015 WL 1880765, *2 (M.D. Fla. Apr. 24, 2015). As such, between August 20, 2014, and August 20,

---

[3] Respondents erroneously state that Petitioner filed his successive Rule 3.850 motion on July 1, 2015. Resp. at 7. However, for purposes of this Order, the Court finds that Petitioner filed his successive Rule 3.850 motion on the date adhered to the prison stamp, which is June 26, 2015.

5

2015, Petitioner did not have any properly filed motions that tolled his one-year limitations period, and therefore his one year expired on Thursday, August 20, 2015. Accordingly, the Court finds that the Petition, filed on July 10, 2018, is untimely filed.[4]

Because the Petition is untimely, to proceed, Petitioner must show he is entitled to equitable tolling. "When a prisoner files for habeas corpus relief outside the one-year limitations period, a district court may still entertain the petition if the petitioner establishes that he is entitled to equitable tolling." Damren v. Florida, 776 F.3d 816, 821 (11th Cir. 2015). The United States Supreme Court established a two-prong test for equitable tolling of the one-year limitations period, stating that a petitioner "must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." Lawrence v. Florida, 549 U.S. 327, 336 (2007); see also Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008) (noting the Eleventh Circuit "held that an inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence." (citation omitted)).

---

[4] Likewise, even assuming Petitioner's successive Rule 3.850 motion tolled his one-year period until the First DCA issued its April 12, 2018, mandate, his one year would have resumed April 13, 2018, and expired 55 days later on June 7, 2018, and the Petition would still be untimely filed.

6

In his Reply, Petitioner argues that the Court should consider the merits of his Petition "because he can show cause and actual prejudice from the default." Doc. 13 at 2. To support that claim, Petitioner relies on the "cause and prejudice" standard set forth in Coleman v. Thompson, 501 U.S. 722 (1991), to argue that the Court should overlook the state court's finding that his successive Rule 3.850 motion was untimely. Doc. 13 at 2-4. Petitioner's reliance on Coleman is misplaced. The "cause and prejudice" standard Petitioner references applies to the issue of exhaustion and cause to excuse a procedural default premised on a state court's independent and adequate state procedural rule. See Coleman, 501 U.S. at 750. This "cause and prejudice" standard does not pertain to the timeliness of a federal habeas petition. As a result, to the extent that Petitioner relies on procedural default case law to excuse the untimely filing of this action, such authority is inapplicable. See White v. Martel, 601 F.3d 882, 884 (9th Cir. 2010) (finding petitioner's reliance on procedural default principles, attacking the adequacy of a state's independent procedural bar, was irrelevant to timeliness analysis); see also Lambrix v. Sec'y, Fla. Dept. of Corr., 756 F.3d 1246, 1249 (11th Cir. 2014) (holding "cause and prejudice" standard of Martinez[5] only applies to procedural default analysis and

---

[5] Martinez v. Ryan, 132 S. Ct. 1309 (2012).

7

has no application to the operation or tolling of the § 2244(d) statute of limitations for filing a § 2254 petition).

Petitioner also appears to argue that he is entitled to equitable tolling because his attorney at sentencing, Rommel, should have moved to withdraw Petitioner's plea under Florida Rule of Criminal Procedure 3.170(l) within thirty days of Petitioner's sentencing instead of filing a Rule 3.850 motion. Doc. 13 at 4. Notably, Petitioner asserts that had counsel filed a motion under Rule 3.170(l), any appeal taken after would have been a direct appeal of his judgment and sentences. Id. To that end, he asserts that his judgment and sentences would have become final ninety days after the First DCA issued its July 24, 2014, opinion, and so his AEDPA statute of limitations would begin to run on October 22, 2014. Id. at 6-7. He then contends that the trial court would not have dismissed his second Rule 3.850 motion as untimely, and thus that motion would have been considered "properly filed" to toll his one-year limitations period. Id. at 7.

Petitioner's logic is flawed. Petitioner is correct that if his attorney had filed a Rule 3.170(l) motion rather than a Rule 3.850 motion, the appeal Petitioner filed following the trial court's denial would be a direct appeal of his judgment and sentences. But he assumes that had counsel pursued that course, the First DCA would have per curiam affirmed his judgment and sentences without a written opinion on the exact date it affirmed the trial court's denial

8

of the initial Rule 3.850 motion. Petitioner cannot rely on such hypotheticals to overcome the AEDPA time bar. Petitioner's claim that a Rule 3.170(l) motion and subsequent direct appeal would have resulted in a more favorable calculation of his one-year period does not amount to the type of extraordinary cicrumstance entitling him to equitable tolling.

Further, and likely of more import, "attorney negligence, even gross or egregious negligence, does not by itself qualify as an 'extraordinary circumstance' for purposes of equitable tolling; either abandonment of the attorney-client relationship, . . . or some other professional misconduct or some other extraordinary circumstance is required." Clemons v. Comm'r, Ala. Dep't of Corr., 967 F.3d 1231, 1242 (11th Cir. 2020) (quoting Cadet v. Fla. Dep't of Corr., 853 F.3d 1216, 1227 (11th Cir. 2017)). At the evidentiary hearing on Petitioner's initial Rule 3.850 motion, the trial court asked Rommel about her decision to withdraw Petitioner's pro se motion to withdraw plea pending at the time of her appointment. Resp. Ex. F at 125-28.

> THE COURT: What happened to the motion to . . . set aside [plea]?
>
> [ROMMEL]: You Honor, I met with Mr. Williams. I went over the evidence as I believed it to be at the time and just had a conversation with him as to whether or not it would be in his interest at that point to go forward with the plea. And the decision was, based on the evidence at the time, that it was in his best interest to go forward with the plea.

9

> THE COURT: And so did you . . . after discussing it with him and him after discussing with you, withdraw the motion to set aside the plea?
>
> [ROMMEL]: Yes, sir.

Id. at 128-29. Rommel also explained that when she realized that the victim's testimony at sentencing contradicted his prior deposition testimony, she considered moving to withdraw Petitioner's plea after the sentencing hearing. Id. at 129. She testified to the following:

> [ROMMEL]: I was familiar with the law on recantation and I was aware that there are several factors that actually make for a viable claim. I wanted to research that before I advised [the judge that Petitioner wished to withdraw his plea].
>
> In addition, before I would ever advise a client to withdraw his plea I would want to have a lengthy discussion about the consequences. He would have been opening himself up again to an exposure that he needed to be aware of, the potential of going to trial.
>
> THE COURT: What was that exposure?
>
> [ROMMEL]: Your Honor, it was actually attempted second degree murder . . . . It started with a 25 year min man. It would have gone up to life, however, I believe he was a juvenile at the time, so technically he couldn't have gotten life under the new case law, but he could [get] anywhere up to life.
>
> It was something that I would have – I would not have felt comfortable if I had continued with that without a conversation with him, which is what I did. I went to the jail afterwards. And after I researched the issue and – also, I wanted to have the opportunity to talk to [the victim] . . . .

10

Id. at 129-30.

The facts here do not show that Petitioner's attorney abandoned him under circumstances justifying Petitioner's delay in pursuing his federal habeas remedies. Rather, the record evidence shows that Petitioner's counsel considered filing a Rule 3.170(l) motion but based on her research and experience, she decided that it would not have been in Petitioner's best interest. Counsel's conduct does not support equitable tolling. Nor does Petitioner assert actual innocence as a gateway to avoid enforcement of the one-year limitations period. See McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013). Thus, this action is due to be dismissed.

Accordingly, it is

**ORDERED AND ADJUDGED**:

1. The Petition (Doc. 1) and this case are **DISMISSED with prejudice**.

2. The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3. If Petitioner appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending

11

motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[6]

**DONE AND ORDERED** at Jacksonville, Florida, this 2nd day of August, 2021.



TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C: Timothy Williams, #J41879
counsel of record

---

[6] The Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.